**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:15-cv-105-RJC**
**(3:13-cr-79-RJC-1)**

| | | |
|---|---|---|
| **PHANI RAJU BHIMA RAJU,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I.      BACKGROUND

Petitioner Phani Raju Bhima Raju was the owner and president of iFuturistics, Inc.,

which was billed as an information technology company specializing in software development

and information technology (IT) consulting located in Pineville, North Carolina.  (Crim. Case

No. 3:13cr79-RJC-1, Doc. No. 19 at ¶¶ 4-5: PSR).  The Department of Homeland Security,

United States Citizenship and Immigration Services' (USCIS) fraud detection unit investigated

iFuturistics after being notified that the company appeared to be engaged in fraud involving H-

1B non-immigrant workers.  (Id. at ¶ 4).  Under the Immigration and Nationality Act,

prospective employers may bring foreign nationals into the United States for employment in

specialty occupations on a temporary basis.  (Id., Doc. No. 1 at 1: Bill of Info.).  Through the H-

1B visa program, a prospective employer files a Labor Condition Application (Form ETA-9035)

with the Department of Labor (DOL), listing the location where the foreign national employee

will be working, the prevailing wage in that area, and the wage that the employer intends to pay the employee. (Id. at 1-2).

Once the DOL certifies the Labor Condition Application, a prospective employer then files a Form I-129 petition with the USCIS to obtain an H-1B visa for the non-immigrant foreign worker. (Id. at 2). This petition includes information about proposed employment, including the address of the work location, so the USCIS can determine if the petitioning company has concrete employment plans in place. (Id.). A company that petitions for an H-1B visa must be an employer, not a hiring agent, and has a responsibility to provide truthful information to the government, to offer the visa holders qualifying employment, and to pay the visa holders' wages during the visa period, which is generally up to three years. (Id.). The company also must not engage in "benching," which is the practice of placing visa holders in nonproductive status without pay while they wait for placement with other employers. (Id.).

At the onset of the investigation, iFuturistics claimed to have 20-25 workers. (Id., Doc. No. 19 at ¶ 4). The investigation revealed that Petitioner and others recruited foreign nationals to work in the United States, promising them high salaries. (Id. at ¶ 5). In an effort to obtain H-1B visas, Petitioner prepared, signed, and submitted DOL forms and I-129 petitions that indicated that the foreign national employees would be working for iFuturistics in Pineville. (Id.). Recruited employees were given a "cheat sheet" of questions and answers to help them through the H-1B interviews. (Id.). In many instances, the people recruited did not receive the job and salary listed in their visa petitions, but instead were placed at work locations other than in Pineville, or were "benched" with little or no pay to wait on another work assignment. (Id. at ¶¶ 5-6). In July 2009, when iFuturistics reported to USCIS in an I-129 petition that it had thirty employees, the company had filed approximately 111 successful H-1B petitions. (Id. at ¶ 7). In

contravention of the H-1B program, iFuturistics had contracts with staffing agencies that provided workers to companies seeking skilled IT employees. (Id.). iFuturistics filed 263 I-129 petitions with USCIS and received approximately $7.6 million for hiring out foreign nationals that the company claimed to have hired for itself through the H-1B visa program. (Id. at ¶ 12).

On November 19, 2009, law enforcement and immigration agents visited iFuturistics' main office in Pineville during regular business hours, but the door to the business was locked, the building was dark, and no one was working there. (Id.). Agents contacted Petitioner, stating that they were conducting a site visit. (Id.). Petitioner stated that he could not meet with them that day, but that he could meet with them the following day. (Id.). However, investigators observed Petitioner drive by the office while they were still there. (Id.). Before the visit scheduled for the following day, Petitioner and others moved furniture into the office, set up work stations, and recruited several people to pretend to be iFuturistic workers. (Id.). However, when agents returned weeks later on December 7 and 14, the office was dark and empty, as it had been before the planned inspection. (Id.).

As a result of the investigation, Petitioner was charged in a five-count Bill of Information with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count One); presentation of fraudulent immigration documents and aiding and abetting the same in violation of 18 U.S.C. §§ 2, 1546 (Count Two); unlawful employment of at least ten unauthorized aliens within a one-year period and aiding and abetting the same in violation of 8 U.S.C. § 1324(a)(3)(A) and 18 U.S.C. § 2 (Count Three); hiring, recruiting, and referring for a fee unauthorized aliens for employment in violation of 8 U.S.C. § 1324a(a)(1)(A) and 18 U.S.C. § 2 (Count Four); and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h)

(Count Five).[1]  (Id., Doc. No. 1: Bill of Info.).  Counts One, Three, Four, and Five were alleged to have taken place from on or about March 20, 2008, to on or about November 28, 2012.  (Id.).

Petitioner's wife was also a target of the investigation.  (Doc. No. 8-1 at ¶ 7: Rawls Aff.).  When Petitioner learned this, he asked his retained counsel, Eben T. Rawls, to negotiate a plea that would exclude his wife from prosecution and that would save their home from forfeiture.  (Id. at ¶ 8).  Rawls was able to accomplish this and to secure an agreement that excluded reference to the fraud guidelines under U.S.S.G. § 2B1.1.  (Id. at ¶ 9).  Rawls discussed the nature of the charges, the discovery provided by the Government, the consequences of the Sentencing Guidelines, and possible defenses to the charges with Petitioner before his plea.  (Id. at ¶ 6).  He asked Petitioner to provide him with all documents that might support a defense.  (Id.).  Rawls reviewed the terms of the plea agreement, including the applicability of the enhancements, with Petitioner, who stated that he understood and accepted these terms.  (Id. at ¶ 9).

Petitioner signed the plea agreement, agreeing to waive indictment and to plead guilty to all five counts alleged in the Bill of Information.  (Id., Doc. No. 3: Plea Agrmt.).  As part of the plea agreement, the Government agreed not to file criminal charges against Petitioner's wife for related conduct.  (Id. at ¶ 1).  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties agreed to jointly recommend to the Court that Petitioner's plea was timely under U.S.S.G. § 3E1.1(b) and that a sentence within the applicable guideline range was appropriate, so neither party would seek a departure or variance.  (Id. at ¶ 7).  The parties also stipulated that an adjusted

---

[1] Petitioner was previously indicted in a related case, No. 3:12CR391, and initially retained counsel in these proceedings.  (Doc. No. 8-1 at ¶ 2: Rawls Aff.).  Following Petitioner's guilty plea in the present case, the charges in the other case were dismissed without prejudice on the Government's motion.

offense level of 26 applied, based on a base offense level of eleven, a nine-level enhancement under U.S.S.G. § 2L2.1(a)(2)(C) because the offense involved 100 or more documents, a four-level increase under U.S.S.G. § 3B1.1(a) because Petitioner was a leader or organizer of criminal activity, and a two-level increase under U.S.S.G. § 2S1.1(b)(2) because Petitioner was convicted of money laundering. (Id.). Petitioner waived the right to contest his conviction or sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 15-16). He also agreed that his failure to fully comply with any provision of the plea agreement, as well as any attempt to withdraw his guilty plea, would not relieve Petitioner of his obligations under the plea agreement, but would relieve the Government of its obligations under the plea agreement, would permit the Government to proceed on any dismissed, pending, or additional charges, and might result in the loss of acceptance of responsibility. (Id. at ¶ 3).

At the Rule 11 hearing, the terms of the plea agreement were summarized, including the stipulation that the offense involved 100 or more documents and that Petitioner was an organizer or leader of criminal activity, and Petitioner stated that he understood the terms of the plea agreement and agreed to those terms. (Id., Doc. No. 35 at 20-23: Plea Tr.). He testified that he had sufficient time to discuss possible defenses to the charges with his attorney, that he was satisfied with his attorney's services, and that his plea was made voluntarily. (Id. at 23-24). The magistrate judge found that Petitioner's plea was knowingly and voluntarily made. (Id. at 26).

In August 2013, Petitioner informed attorney Rawls that he wanted to withdraw his guilty plea. (Doc. No. 8-1 at ¶ 11). Rawls informed Petitioner that he would not be able to represent him in that endeavor. (Id.). Given this impasse, Petitioner retained new counsel, and Rawls withdrew. (Id. at ¶¶ 11-12). Before Rawls' withdrawal as Petitioner's attorney, Petitioner never

requested counsel Rawls to seek an evidentiary hearing on any issues, such as the number of documents enhancement. (Id. at ¶ 13).

Petitioner's new counsel Sarah Bennett represented him at sentencing. The probation officer issued a presentence report (PSR) recommending the same guidelines calculation as the plea agreement, with the exception of adding a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. (Crim. Case No. 3:13cr79-RJC-1, Doc. No. 16 at ¶¶ 20-29: PSR). Allowing a three-level reduction for acceptance of responsibility, this resulted in a total offense level of 25. (Id. at ¶ 29). Given Petitioner's criminal history category of I, the advisory guidelines range was 57-71 months of imprisonment. (Id. at ¶¶ 34; 56). Petitioner filed a sentencing memorandum requesting the Court to sentence him in accordance with the offense level agreed to in the plea agreement, which resulted in a sentencing range of 46-57 months of imprisonment, rather than the one in the PSR. (Id., Doc. No. 24 at 1: Def.'s Sent. Mem.).

At sentencing, the parties stipulated that there was a factual basis to support Petitioner's guilty plea and that the Court could rely on the offense conduct in the PSR to establish this factual basis. (Id., Doc. No. 34 at 2: Sentencing Tr.). Petitioner stated that he had received and reviewed the PSR and that he had had sufficient time to discuss it with his attorney. (Id. at 3). The only objection Petitioner raised at sentencing was to the imposition of the two-level enhancement for obstruction of justice, since that was not part of the plea agreement, and he alleged that his actions did not impede the investigation. (Id. at 3-6). This Court overruled this objection and found that the applicable guidelines range was 57-71 months of imprisonment. (Id. at 8-9). Counsel argued that "Raju has fully admitted to his involvement," and Petitioner stated that he took "full accountability" for his actions. (Id. at 14; 18). In light of Petitioner's history and characteristics, the Court found that there was a reduced need to protect the public

and varied downward to impose a 48-month sentence on Counts One, Two, Three, and Five, and a concurrent six-month sentence on Count Four. (Id. at 25). This sentence fell within the guidelines range as recommended by the parties in the plea agreement.

Petitioner appealed, and his counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), but questioned whether application of the enhancement for obstruction of justice was reasonable. Petitioner filed a pro se supplemental brief, arguing that the sentence imposed was unreasonable because there was no clear evidence to support application of the enhancements for the number of documents under U.S.S.G. § 2L2.1(b)(2) and for his playing a leadership role in the offense. See (United States v. Raju, Appeal No. 14-4349, Doc. No. 31-1: Appellant's Supp. Brief). He also asserted that he had received ineffective assistance of counsel. (Id.). The Fourth Circuit affirmed, noting that it had considered the issues raised in Petitioner's pro se supplemental brief and found that "[n]either of the sentencing issues has merit," and that the record did not conclusively demonstrate that he had received ineffective assistance of counsel. United States v. Raju, 590 F. App'x 277, 279 n. (4th Cir. 2015).

On March 5, 2015, Petitioner timely filed the present § 2255 motion, arguing that he received ineffective assistance of counsel and that this Court erred in sentencing him based on the offense involving 100 or more documents and based on his being a leader or organizer of the offense. He also requests an evidentiary hearing and re-sentencing. (Id.).

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the

argument presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.    DISCUSSION

#### A. Petitioner's Claims of Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In evaluating such a claim, statements made by a

defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." <u>United States v. Lemaster</u>, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner first argues that counsel Eben Rawls provided ineffective assistance by failing to adequately investigate the case before Petitioner's plea. (Doc. No. 1 at 4). In particular, he asserts that counsel wrongly advised him to sign the plea agreement, which included a stipulation that the number of documents involved exceeded 100. Petitioner claims that the record does not support a finding that the number of documents involved exceeded 100. (<u>Id.</u>). Petitioner argues that counsel later admitted that he believed, when advising Petitioner, that each page of a document constituted a document under U.S.S.G. § 2L2.1, rather than treating a set of documents for a single person as one document. (<u>Id.</u> at 5; 33). Petitioner contends that counsel refused to request an evidentiary hearing after discovering the error regarding the number of documents enhancement. (<u>Id.</u>). Petitioner contends that this is the reason that counsel left the case and that counsel's actions resulted in Petitioner receiving a longer sentence than that imposed on others charged with similar conduct. (<u>Id.</u> at 4; 26; 30; 33-34; 36).

Petitioner contends that counsel should have obtained iFuturistics' records, as well as records from USCIS, before advising him to sign the plea agreement. (<u>Id.</u> at 34). Petitioner asserts that he "is absolutely convinced that the total number of documents or petitions filed during the alleged period" that listed Pineville as the work location was "around twenty-four."

(Id. at 31).  He notes that, although the PSR states that iFuturistics filed 263 I-129 petitions, the

PSR does not indicate when these petitions were filed.  (Id. at 37).

Petitioner's speculative assertions are insufficient to meet his burden to establish

deficient performance.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013)

(holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert.

denied, 135 S. Ct. 47 (2014).  That is, Petitioner's contention that he believes that the number of

documents was twenty-four is conclusory.  He takes issue with counsel's alleged failure to obtain

iFuturistics' documents during the course of the case.  However, despite that Petitioner was the

owner and president of iFuturistics and, thus, could access his own company records, he provides

no documentation to support his contention regarding the number of documents.

Furthermore, rather than contending simply that over 100 documents were not

fraudulently submitted, Petitioner asserts that this number was not submitted within the time

frame alleged in the Bill of Information or did not list Pineville as the work site.  See (Doc. No. 1

at 27-28; 32).  However, even without Petitioner's stipulation in the plea agreement as to the

number of documents involved in the offense, he could have been sentenced for documents

submitted outside of the dates alleged in the Bill of Information as long as they "were part of the

same course of conduct or common scheme or plan."  U.S.S.G. § 1B1.3(a)(2).  Additionally,

even if Pineville was not listed as the worksite location, the documents would have been

fraudulent if the employee was not working for the petitioning employer, iFuturistics, and,

therefore, also could have been included to support the sentence enhancement.  Regardless of

Petitioner's assertions, the evidence was sufficient to support application of the enhancement.

As the PSR showed, in July 2009, the company reported to USCIS that it only had thirty

employees and, at that time, it had filed 111 successful H-1B petitions.  (Id., Doc. No. 19 at ¶ 7).

The offense conduct continued for more than three years after this, and the investigation showed that iFuturistics filed 263 I-129 petitions with USCIS.  (Id. at ¶ 12).  Yet, the iFuturistics office in Pineville was observed to be dark and empty.  (Id. at ¶ 11).  Because the evidence supported the enhancement, counsel was not deficient in advising Petitioner to agree to this as part of the plea agreement.  See Strickland, 466 U.S. at 687-88.

Moreover, the affidavit submitted by attorney Rawls also supports a finding there was no deficient performance.  Rawls attests that he investigated the case and discussed the discovery produced by the Government, as well as any possible defenses with Petitioner, and asked Petitioner to provide any documents supporting a defense.  (Doc. No. 8-1 at ¶ 6).  He also discussed all of the specific offense characteristics with Petitioner before Petitioner pled guilty and properly advised him regarding the document enhancement.  (Id. at ¶ 9).  Rawls further asserts that he did not withdraw from representing Petitioner due to inaccurate advice regarding application of the enhancement for the number of documents involved in the offense.  Rather, he withdrew based on Petitioner's representation that he wanted to withdraw his guilty plea.  (Id. at ¶ 11).  In sum, the Court finds that counsel's performance was objectively reasonable.  See Strickland, 466 U.S. at 687-88.

Even if Petitioner could show deficient performance, he cannot establish prejudice because he does not allege that, but for counsel's performance, he would not have pleaded guilty.  See Meyer, 506 F.3d at 369.  Petitioner's desire to retain the benefits of the plea agreement is evident from the relief he seeks with this motion, which is not to set aside the plea agreement and proceed to trial, but rather to void only the enhancements and to be resentenced.   See (Doc. No. 1 at 57).  Given the terms of the plea agreement that protected his wife from prosecution, as well as his home from criminal forfeiture, any contention to the contrary would not be objectively

reasonable.  See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).  Petitioner's assertion

that he was prejudiced because he received a higher sentence than he would have if the number

of documents had not been part of his plea agreement is insufficient to establish prejudice under

Strickland.  See Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (holding an

allegation that effective counsel would have negotiated a better plea agreement is insufficient to

establish prejudice under Strickland).  Accordingly, this part of Petitioner's ineffective assistance

of counsel claim fails as a matter of law.

     As part of his ineffective assistance of counsel claim, and despite that he was given a

downward variance at sentencing, Petitioner next contends that his sentencing counsel, Sarah

Bennett, provided ineffective assistance at sentencing.  Petitioner asserts that counsel did not

provide mitigating evidence at sentencing.  (Doc. No. 1 at 4).  He argues that because counsel

rescheduled the interview with the probation officer several times, the probation officer "skipped

several critical sections" of the PSR, that counsel prevented him during the interview with the

probation officer from presenting evidence that Petitioner believed would mitigate some of the

enhancements, and that counsel did not file an objection to the enhancement for obstruction of

justice.  (Id. at 25-26).  He argues that counsel should have requested an evidentiary hearing at

sentencing to require the production of evidence to support the enhancements.  (Id. at 51-54).  In

particular, he contends that he was sentenced for documents or petitions that were filed outside

of the time period alleged in the Bill of Information.  (Id. at 21-22).

     To establish prejudice based on ineffective assistance at sentencing, a petitioner must

show that there is a reasonable probability that he would have received a more lenient sentence,

but for counsel's deficient performance.  Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

Where a party stipulates to a fact or an element of an offense, this waives the requirement that

the government be put to its burden of proof.  See United States v. Clark, 993 F.2d 402, 406 (4th

Cir. 1993).  This includes stipulations as to sentencing enhancements.  See United States v.

Yooho Weon, 722 F.3d 583, 589 (4th Cir. 2013).  Requiring a hearing on issues to which the

parties agree would eliminate the "'chief virtues of the plea system—speed, economy, and

finality.'"  United States v. Wiggins, 905 F.2d 51, 54 (4th Cir. 1990) (quoting Blackledge v.

Allison, 431 U.S. 63, 71 (1977)).

Petitioner's allegations do not establish deficient performance or prejudice.  He does not

specify what sections of the PSR were "skipped," nor does he allege how this prejudiced him.

See Dyess, 730 F.3d at 359-60.  Similarly, Petitioner's contention that counsel prevented him

from providing unspecified evidence that he believed would mitigate some of the enhancements

is also conclusory.  Moreover, given his stipulation to the enhancements, this was not deficient

performance.  Because Petitioner stipulated to the enhancements as part of his plea agreement,

the request for an evidentiary hearing or the presentation of any evidence or argument that these

enhancements did not apply risked violating the plea agreement's terms and relieving the

Government of its obligations under the agreement, including the agreement not to prosecute

Petitioner's wife and the Government's recommendation regarding acceptance of responsibility.

Counsel's conduct in acting in accordance with the plea agreement, which stipulated to the

enhancements, was therefore objectively reasonable.  See Strickland, 466 U.S. at 687-88.

Moreover, although Petitioner contends that counsel was ineffective for failing to object to the

enhancement for obstruction of justice, counsel, in fact, argued in Petitioner's sentencing

memorandum that Petitioner should be sentenced in accordance with the offense level stipulated

to in his plea agreement, rather than that found by the probation officer in the PSR.  See (Crim.

Case No. 3:13cr79-RJC-1, Doc. No. 24 at 1).  Furthermore, counsel argued at sentencing that the

Court should not apply the obstruction of justice enhancement.  (Id., Doc. No. 34 at 3-6).  In any event, Petitioner has not shown how counsel's conduct prejudiced him.  As the Court noted previously, although the Court ended up applying the obstruction of justice enhancement at sentencing, the Court nonetheless varied downward to give Petitioner a sentence the parties had agreed to in the plea agreement.

Finally, to the extent that Petitioner argues that he somehow received ineffective assistance of counsel because he was sentenced based on documents filed outside of the time period alleged in the Bill of Information, he fails to recognize that the timing of the submission of the documents does not change any element of the offense, so inclusion of such conduct would not constructively amend the charging document.  See United States v. Kilgore, 401 F. App'x 842, 844 (4th Cir. 2010) (evidence of conduct occurring after date of alleged conspiracy did not constructively amend the indictment).  Also, under the Sentencing Guidelines, Petitioner could be sentenced for relevant conduct, which includes conduct that is not formally charged and may include acts that fall outside of the timeframe alleged in the charging document.  See United States v. Kennedy, 32 F.3d 876, 890 (4th Cir. 1994).  Moreover, the Fourth Circuit held on Petitioner's appeal that these enhancements were properly included in Petitioner's guidelines range.  See Raju, 590 F. App'x at 279 n.  Thus, Petitioner cannot show a reasonable probability that he would have received a lower sentence but for counsel's conduct.  See Royal, 188 F.3d at 249.

In sum, even if Petitioner's assertions of deficient performance are accepted, he cannot show prejudice with respect to his plea where he does not allege that he would have proceeded to trial but for counsel's performance, and he cannot show prejudice with respect to his sentence

where he stipulated to the enhancements for the number of documents and his leadership role, and the Fourth Circuit found that application of these enhancements was reasonable.

### B. Petitioner's Claim of Error by the Court at Sentencing

Petitioner next asserts that this Court erred by sentencing him under the enhancement for his offense involving 100 or more documents and under the enhancement for being a leader or organizer without holding an evidentiary hearing. (Doc. No. 1 at 7-8; 27). He contends that this violated his right to due process. (Id. at 7). Although Petitioner admits that he raised "similar arguments" on appeal,[2] he contends that review is not barred because the Fourth Circuit "did not delve into the merits of the issues." (Id. at 20 n.1). Because Petitioner waived the right to appeal his sentence in any post-conviction proceeding, these claims are barred by the terms of his plea agreement. The exceptions for claims of ineffective assistance and prosecutorial misconduct do not apply, because Petitioner is directly challenging his sentence. A knowing and voluntary waiver of the right to pursue post-conviction relief is enforceable. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Here, there is no allegation of involuntariness, and any such allegation would be frivolous because it would contradict Petitioner's testimony at the plea hearing. Accordingly, this portion of Petitioner's § 2255 motion is barred by the waiver in his plea agreement.

Even if Petitioner had not waived the right to challenge his sentence, because he raised these sentencing issues on direct appeal and the Fourth Circuit found that they were without merit, he may not re-litigate them on collateral review. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims considered on direct review may not be recast "under

_____

[2]  To the extent Petitioner claims that his motion raises any new issues, these issues would be procedurally barred. See Bousley v. United States, 523 U.S. 614, 621-22 (1998).

the guise of collateral attack"). Accordingly, Petitioner's challenge to enhancement of his sentence based on the number of documents and his leadership role in the offense must be dismissed.

In sum, Petitioner's second claim is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Robert J. Conrad, Jr.
United States District Judge